**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**THE ESTATE OF RANDY LYNN CHENEY**　　　　　　　　　　**PLAINTIFF**

V.　　　　　　　　　　　　　　　　　　　　　　　　　　**NO. 4:09cv111-M-V**

**WANDA COLLIER, INDIVIDUALLY AND OFFICIALLY,**
**GLORIA PERRY, INDIVIDUALLY AND OFFICIALLY,**
**THOMAS G. TAYLOR, INDIVIDUALLY AND OFFICIALLY,**
**SYLVIA KELLY, INDIVIDUALLY AND OFFICIALLY,**
**WEXFORD HEALTH SOURCE, INC.,**
**THOMAS LEHMAN, M.D., JUAN SANTOS, M.D.,**
**DOM TRINCA, M.D., AND JOHN DOES 1-10**　　　　　　　　**DEFENDANTS**

**MEMORANDUM OPINION ON MOTION TO**
**DISMISS OF DEFENDANTS WANDA COLLIER, INDIVIDUALLY,**
**AND THOMAS G. TAYLOR, INDIVIDUALLY, RE: QUALIFIED IMMUNITY**

I. Introduction

This matter is before the Court on Wanda Collier's and Thomas G. Taylor's Motion to Dismiss[1] Plaintiff's individual capacity claims under 28 U.S.C. § 1983 against them for denied/delayed medical treatment on the basis of qualified immunity. For the reasons set out more fully below, there are no genuine issues of material fact regarding whether Taylor and Collier are entitled to qualified immunity because Plaintiff has failed to meet its burden of presenting evidence sufficient to show a constitutional violation. Accordingly, the motion will be granted.

This § 1983 action for violation of constitutional rights is premised on the alleged delayed/denied medical treatment of Randy Lynn Cheney. While a State inmate at the Bolivar

---

[1] Because the parties have presented and the court has relied upon matters outside the pleadings, the court will treat the motion as one for summary judgment.

County Correctional Facility (BCCF) in Cleveland, Mississippi, Cheney suffered from a viral syndrome and ultimately died in the early morning of August 30, 2007. The remaining background facts of the case have been set forth in previously filed motions and briefs and will not be repeated herein, except to the extent necessary to the court's findings.

## II. Summary Judgment and Qualified Immunity

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A "genuine" dispute exists if, based on the evidence, a reasonable jury could return a verdict for the nonmoving party. *Hamilton v. Segue Software Inc.,* 232 F.3d 473, 477 (5th Cir. 2000). When reviewing a summary judgment, we "draw all reasonable inferences in favor of the nonmoving party." *Turner v. Baylor Richardson Medial Center*, 476 F.3d 337, 343 (5th Cir. 2007) (citations and internal quotation marks omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *See Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005). Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Id*. "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott,* 276 F.3d 736, 744 (5th Cir. 2002).

The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of

the violation. *Manis v. Lawson,* 585 F.3d 839, 843 (5th Cir. 2009). A court may rely on either prong of the defense in its analysis. *Id.* If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004) (citations omitted). To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Brown v. Miller,* 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the defendant's actions must have been readily apparent from sufficiently similar situations, but it is not necessary that the defendant's exact acts have been illegal. *Id.* at 236–37. In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper. *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir.1994).

### III. Discussion

Plaintiff claims the defendants violated Cheney's Eighth Amendment rights because they were "deliberately indifferent" to his "serious medical needs" during his incarceration at BCCF. To proceed with a §1983 claim for denial of medical treatment under the Eighth Amendment, a prisoner must present evidence that the defendant's conduct amounts to deliberate indifference to his serious medical needs, constituting the unnecessary and wanton infliction of pain proscribed by the by the Eighth Amendment. *Stewart v. Murphy*, 174 F3d. 530, 533 (5th Cir. 1999). *See also Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A prison official violates the Eighth Amendment only when (1) the deprivation alleged is "objectively, sufficiently serious," that is, "a prison official's act or omission must result in the

3

denial of the minimal civilized measure of life's necessities," and (2) the prison official's "state of mind is one of deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Id*. at 837.

1. Warden Taylor

Warden Taylor is not a medical professional but merely served as Warden of BCCF during Cheney's incarceration there. Plaintiff has not offered evidence that Taylor played any personal role in Cheney's treatment or was directly involved in the facts and circumstances giving rise to this lawsuit. *See Hampton v. Oktibbeha County Sheriff Department*, 480 F.3d 358, 365 (5th Cir. 2007) ("A supervisor officer cannot be held liable under § 1983 for the actions of subordinates on any theory of vicarious liability."). Neither is there any evidence that he implemented any sort of policy at the facility that caused Cheney to suffer any constitutional violation and no evidence of any deliberate indifference in that regard. Accordingly, Taylor is entitled to qualified immunity.

2. Nurse Collier

In support of its claim that Collier violated Cheney's constitutional rights, Plaintiff presents excerpts of deposition testimony of Collier and Thomas Rogers, Cheney's fellow inmate at BCCF. Rogers testified that on August 24 Cheney told him that he had previously put in "two or three" sick call requests to Nurse Collier.[2] Rogers further equivocated that he himself "could

---

[2] According to Rogers, August 24 was on a Friday. Rogers Dep. 114.

have" and "did" submit a sick call request on behalf of Cheney on the evening of Friday, August 24.[3] According to Rogers, on either August 23 or August 24, in response to his verbal statement to Collier that Cheney "needs to see a doctor," Collier replied, "If you keep bothering me, I will send him back to Parchman for lockdown." Rogers also stated that on August 28, after Nurse Collier had left work for the day, he informed a prison guard that Cheney needed to be seen by the nurse. When he later inquired whether the nurse had been phoned, he was informed by the guard that he had called her.

Nurse Collier, on the other hand, testified that she received only two sick call requests: one that was received unsigned on an unknown date prior to August 29, stating "I have a cold"; and one that was dated August 29, signed by Cheney, and received by Collier on August 29–in response to which she examined Cheney and sought further medical care for him.

The Court finds the facts offered by Plaintiff in this case do not amount to evidence sufficient to create a genuine issue over whether, prior to August 29, Nurse Collier knew Cheney had a serious health condition. Indeed, according to Rogers–the only witness offered by Plaintiff in support of its claims against Collier–August 23 was the first date on which he noticed anything wrong with Cheney at all, and he did not think it was material enough to mention it to Cheney until the following day. Rogers Dep. 114-116. Ultimately, though Rogers testified that Cheney said that on August 24 he (Cheney) had made "two or three" prior sick call requests, there is no evidence, aside from this statement, that such requests were ever actually made, and, more importantly, no indication at all that the sick call requests indicated Plaintiff had a serious medical condition or that Collier ever actually received them. To the contrary, Rogers himself

---

[3] Nurse Collier does not typically work on weekends.

had not previously noted Cheney to be suffering from any ill health, and Nurse Collier testified that prior to August 29 the only sick call request she received was an unsigned one stating, "I have a cold." Collier also testified that when she personally returned the unsigned form to Cheney to sign and resubmit in accordance with prison policy, she observed Cheney to be in no apparent ill health. Lastly, though Rogers asserts that Collier, on August 24 in response to his statement that Cheney "needed to see a doctor," responded by threatening to transfer Cheney to Parchman for lockdown, this is not evidence that Collier knew Cheney was, prior to August 29, suffering from a serious medical condition.

Finally, with respect to her conduct on August 29, Collier states in her reply brief that Plaintiff does not appear to take issue with her conduct on that date. Pl.'s Reply Brief p. 5. The Court agrees with that assessment, except to note that in its response to the instant motion, Plaintiff did allege the following:

> [W]hen Collier had no choice but to attend to Cheney after Rogers placed him outside of her door on August 29th, Collier realized Cheney's condition was in a critical stage. Collier has explained that Cheney's "ashy color, the paleness – the low blood pressure, and increased heart rate" led her to believe she was in an emergency situation. (Citations omitted). Yet, she did not arrange for Cheney to go to the nearest local hospital, nor did she verbally disagree with Dr. Trinca's order to transport Cheney to Parchman. . . . Thus the actions of Collier . . . cannot be said to have been objectively reasonable and Cheney should have been sent to the nearest hospital in light of his deteriorating condition.

Pl. Resp. Mem. Brief pp. 12-13.

The Court finds that this assertion, though perhaps amounting to a claim of medical negligence, falls far short of a constitutional violation, particularly where, as here, the undisputed proof is that Nurse Collier treated Cheney and recommended that he be transported to a local emergency room, but was instructed by the doctor in charge, to transport him instead to another

6

prison facility where he [the doctor] was in attendance. Therefore, the Court finds that Plaintiff has failed to show a constitutional violation. Consequently, there is no need for the Court to examine the second prong of the qualified immunity analysis.

## IV. Conclusion

Ultimately, for the foregoing reasons, Taylor and Collier are entitled to qualified immunity, as Plaintiff has failed to show a constitutional violation. Therefore, Defendants' motion for summary judgment [# 32] is GRANTED, and Plaintiff's individual capacity claims against Taylor and Collier are dismissed.

SO ORDERED this 30th day of May, 2012.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**