UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THE ESTATE OF RANDY LYNN CHENEY
by and through GEORGE R. CHENEY, Administrator                    PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 4:09cv111-MPM-JMV

WANDA COLLIER, INDIVIDUALLY AND OFFICIALLY,
GLORIA PERRY, INDIVIDUALLY AND OFFICIALLY,
THOMAS G. TAYLOR, INDIVIDUALLY AND OFFICIALLY,
SYLVIA KELLY, INDIVIDUALLY AND OFFICIALLY,
WEXFORD HEALTH SOURCE, INC.,
THOMAS LEHMAN, M.D., JUAN SANTOS, M.D.,
DOM TRINCA, M.D., AND JOHN DOES 1-10                               DEFENDANTS

## MEMORANDUM OPINION ON MOTION

### I. Introduction

This matter is before the court on motion of Defendants Wexford Health Sources, Inc., Juan Santos, M.D., Thomas Lehman, M.D., and Dominic Trinca, M.D., for immunity and a corresponding partial summary judgment [Doc. 45].

Particularly, these defendants contend they are covered by the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1 *et seq.* ("MTCA"), and are, therefore, entitled to immunity from suit under the Act because Wexford operated as a "political subdivision" of the State of Mississippi by its provision of health care services to inmates under contract with the Mississippi Department of Corrections ("MDOC").  As discussed fully below, the court finds that neither Wexford nor its employees, Drs. Santos, Lehman, and Trinca, are entitled to immunity under the MTCA based on the particular circumstances of this case.

### II. Background Facts

Plaintiff, the Estate of Randy Lynn Cheney, is asserting claims for violations of § 1983 and medical negligence, resulting in Mr. Cheney's death. Cheney was a prison inmate incarcerated at the Bolivar County Correctional Facility in Cleveland, Mississippi. He remained there until August 29, 2007, when he was transported by ambulance to Parchman Hospital at the Mississippi State Penitentiary in Parchman, Mississippi. The complaint alleges that while at Parchman, Cheney was treated by Drs. Santos, Lehman, and Trinca and was eventually transferred to Greenwood-Leflore Hospital where he died on August 30, 2007.

The complaint alleges that Wexford and Drs. Santos, Lehman, and Trinca committed various negligent acts and omissions which proximately caused or contributed to Cheney's death. At all relevant times, Drs. Santos, Lehman, and Trinca were employed by Wexford. Wexford is a private, for-profit, Florida corporation that provides certain medical, dental, and mental health services to prison inmates at particular facilities in the State of Mississippi. The types of services provided by Wexford, along with the facilities it serves, are specified in its contract with MDOC.[1]

The contract between Wexford and MDOC further reveals a certain division of labor existing between Wexford and MDOC, and under that division of labor, MDOC exercises authority over some important matters. In this regard, MDOC retains the right to approve key Wexford personnel, such as medical directors, physicians, mid-level practitioners, and nursing directors. MDOC also establishes, through appropriate arrangements, the particular off-site medical centers which will be used for emergencies that cannot be treated on-site at a prison.

---

[1] *See* "Agreement Between the State of Mississippi Department of Corrections and Wexford Health Sources, Inc. for Onsite Inmate Health Services," attached as an exhibit to Lynda Powell's Summary Judgment Affidavit [Doc. 45-2].

Finally, MDOC makes the final decisions as to specialty referrals. Notwithstanding this degree of control exercised by MDOC, the contract expressly defines Wexford as an "independent contractor" and denies MDOC any right to control the "method" or "manner" by which Wexford performs its duties under the contract. Further, under the contract, Wexford assumes full responsibility for any liability, damages, and injury resulting from its or its employees' own acts or omissions.

### III. Summary Judgment Standard

Summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" demonstrate there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c). Once the movant satisfies the initial burden of showing the absence of a genuine issue of material fact, then under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-moving party to set forth specific facts to show that there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). While all factual inferences must be made in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255, the non-movant's burden is not satisfied by setting forth "mere allegations or denials." Fed. R. Civ. P. 56(e).

### IV. Discussion

Wexford is seeking immunity from suit recognized by the MTCA, and in order to establish that it is covered by the Act, it argues it is a "political subdivision" of the State of Mississippi. In this regard, it relies on its status as a corporation that provides medical, dental, and mental health services to inmates at certain prison facilities, pursuant to a contract with MDOC. Dr. Santos, Dr. Lehman and Dr. Trinca, are relying on their status as employees of

Wexford. In support of its motion for immunity, Wexford asserts that the issue of whether a private corporation is entitled to the protections and immunities of the MTCA as a " political subdivision" thereof has never been decided by the appellate courts of Mississippi or any Mississippi federal district court and that the issue is thus one of first impression. The Plaintiff agrees with this assertion and further asserts that "no Mississippi case can be cited that allows a private corporation such as Wexford . . . the protections and immunities of the MTCA." *Id*.

As this court will discuss below, the parties are incorrect in their assertions as to precedent existing as of the briefing of the subject motion. Furthermore, the court notes that precisely the issue here was most recently decided in *Shirely White, as Wrongful Death Beneficiary of Keith Perkins, Deceased v. Wexford Health Sources, Inc. and Tunica County*, Mississippi, 2:09cv161-GHD-JMV. In that case, U. S. District Judge Davidson, citing several Mississippi Supreme Court cases and federal cases from the Southern District of Mississippi that have decided essentially the issue presented here, concluded that the MTCA, under circumstances virtually identical to those presented in this case, does not apply to Wexford.[2] This court reaches the same conclusion in this case and will address Wexford's arguments in turn.

    *A.*    *Whether Wexford Is a "Political Subdivision" Under the MTCA.*

Wexford generally argues that as a "political subdivision" of the State, it and its employees are entitled to immunity pursuant to MISS. CODE ANN. § 11-46-9(m), which deems

---

[2] *See* Memorandum Opinion [Doc. 71] and Order [Doc. 70] in *White*, 2:09cv161-GHD-JMV.

the State, its political subdivisions, and their employees immune from any suit by a prisoner.[3] Specifically, Wexford contends that it is a "political subdivision" within the meaning of the MTCA because it is a corporate body performing "essential, constitutionally-mandated state duties." Br. in Supp. of Wexford's Mot. for Imm. and Corr. Pat. Summ. J. 6-8.

The pertinent section of the MTCA states:

§ 11-46-1. Definitions

As used in this chapter the following terms shall have the meanings herein ascribed unless the context otherwise requires:

. . . .

(g) "Governmental entity" means and includes the state and political subdivisions as herein defined.

. . . .

(i) "Political subdivision" means any body politic or body corporate other than the state responsible for governmental activities only in geographic areas smaller than that of the state, including, but not limited to, any county, municipality, school district, community hospital as defined in Section 41-13-10, Mississippi Code of 1972, airport authority or other instrumentality thereof, whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name.

---

[3]Section 11-46-9 states in pertinent part:

> Governmental entities and employees; exemption from liability
>
> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed;
>
> . . . .

5

. . . .

MISS. CODE ANN. § 11-46-1. Ultimately, Wexford contends that because it literally meets the definition of a "political subdivision," it is entitled to immunity under the MTCA.

The plaintiff, on the other hand, argues, *inter alia*, that "no Mississippi case can be cited that allows a private corporation such as Wexford . . . the protections and immunities of the MTCA." *Id.*, and further that "Wexford cannot on one hand claim that the services it provides are essential 'governmental activity' and that it is so intertwined with MDOC while on the other hand contractually separate itself from MDOC and contract away its obligation to indemnify MDOC employees or agents who are sued performing healthcare for MDOC inmates." Pl.'s Br. in Resp. to Wexford's Mot. for Imm. and Corr. Summ. J. 3.

The issue of whether a private, for-profit corporation, performing services on behalf of a governmental entity is entitled to the protections of the MTCA was addressed by the Southern District of Mississippi in *Thompson v. McDonald Transit Associates, Inc.,* 440 F. Supp. 2d 530 (S.D. Miss. 2006). In that case, the City of Jackson contracted with the defendant, McDonald Transit Associates, Inc. ("McDonald"), a private, for-profit, Texas corporation, to operate and maintain the City's public transportation system. *Thompson*, 440 F. Supp. 2d 530-531. The plaintiff alleged he was injured while boarding a public transit bus and sued McDonald for negligence. *Id*. at 530-531.

McDonald essentially argued it was entitled to the same protections as the City under the MTCA because it was performing a "government activity" by its operation of the transport system under contract with the City. *Id*. at 532. Like Wexford in this case, McDonald argued it met the definition of a "political subdivision" as defined in the MTCA and was, therefore, entitled to

6

immunity under the statute. *Id*. McDonald was paid a flat fee for its services and reimbursed its operating expenses out of revenues paid the City by the public using the transportation system. *Id*. at 531. The City, however, retained substantial oversight of the operation of the public transport system and furnished all equipment and approved all budgets and contracts related to its operation. *Id*.

Recognizing (then) a "scarce amount of Mississippi case law regarding application of the MTCA to private companies," U. S. District Judge William H. Barbour noted that the Mississippi Supreme Court had considered the application of the MTCA to at least one private, for-profit entity, citing *Mozingo v. Scharf*, 828 So.2d 1246 (Miss. 2002). *Id*. at 532. The court explained that in that case the Mississippi Supreme Court found that a private, for-profit, legal entity did not function as a private entity, but rather as a "political subdivision" of the "State" for purposes of the MTCA. *Id.* at 532-533. The court noted that the Mississippi Supreme Court considered as significant the following circumstances: (1) that the entity, though private, was created by the State to carry out the mandate of the State Legislature to provide the medical services to the public; (2) that the sole purpose of its creation was to bill and collect fees for the state hospital; (3) that its only members were the state hospital physicians who were required to practice exclusively at the state hospital; and (4) that the entity was bound by the state hospital guidelines. *Id*. at 533.

Applying those factors to McDonald, Judge Barbour found little similarity between [the private entity in *Mozingo*] and McDonald. *Id*. The court recognized that the City exercised substantial oversight over the operation of the transit system – including approval of the budget and all contracts related to the transit system– and the City was responsible for furnishing all

7

equipment and facilities necessary to operate the transit system, *Id*. at 531. However, the court found significant the fact that McDonald had not been created for the sole purpose of fulfilling a state-mandated government service, but had, instead, presumably been created to be a profitable business for the benefit of it's shareholders. *Id.* at 533. Moreover, the court noted that operation of the public transport system was unlikely McDonald's sole purpose for existence. *Id*. The court explained:

> Considering McDonald is a Texas corporation, the Court presumes that McDonald is involved in other ventures in other states. This capitalistic nature is an overriding consideration that clearly distinguishes McDonald from an entity such as UAS [the private entity at issue in *Mozingo*] which merely exists to supplement the salary of UMMC faculty-physicians.
>
> McDonald also points out that the City has significant control over JATRAN [the public transport system] and that the City receives all revenue generated by JATRAN. But, McDonald overlooks the fact that it maintains ultimate control over the day-to-day operations of JATRAN, as the general manager of the transit system is a McDonald employee. Also, the City's receipt of revenues is of little significance considering McDonald receives a yearly fee from the City for it's services.
>
> After considering the overall nature of the contractual relationship between the City and McDonald, the Court believes that the Mississippi legislature [sic] did not intend for the MTCA to extend to a private entity such as McDonald. The Court therefore concludes that McDonald is not protected by the MTCA.

*Id.*

Not long after its holding in *Thompson*, the Mississippi Supreme Court considered whether a private, medical clinic, limited liability partnership was entitled to the protections, limitations, and immunities of the MTCA in a medical malpractice suit, *Bolivar Leflore Medical Alliance, LLP v. Williams,* 938 So.2d 1222, 1226 (Miss. 2006). In that case the partnership had

8

been created as a family medical clinic by agreement between Greenwood Leflore Hospital[4], a community hospital, and two physicians. *Bolivar Leflore Medical*, 938 So.2d at 1223. The court concluded that while it was possible for a private entity responsible for governmental activities to properly be regarded as a political subdivision pursuant to the MTCA, there were limits on such circumstances. The court highlighted the circumstances that supported its earlier finding in *Watts v. Tsang*, 828 So.2d 785 (Miss. 2002), that "'a private corporate entity' which is 'responsible for governmental activities' may properly be regarded as a 'political subdivision' under . . . [§ 11-46-1(i)]. *Bolivar Leflore Medical*, 938 So.2d at 1227. Quoting *Watts*, the court stated:

> we are *not* holding that all medical practice groups are per se instrumentalities of the State. However, where as here the medical practice group was created by UMMC, and is overseen by UMMC, and the purpose is to supplement the income of its faculty; when the day-to-day oversight is left to the department chair, subject to limited oversight by the vice chancellor, and its membership is composed solely of full-time UMMC faculty physicians; where the faculty physicians can only practice at UMMC approved sites, and the money is distributed on a point system based on factors other than mere patient service, we must conclude that the medical practice group is a State entity.

*Bolivar Leflore Medical*, 938 So.2d at 1228 (citation omitted).

Ultimately, the *Bolivar Leflore Medical* court found the partnership was entitled to the protections, limitations, and immunities of the MTCA as an instrumentality of the hospital because, among other things, it had been created and overseen by the hospital and because of the hospital's nearly total interest in the income and losses of the partnership, and its majority control over the partnership's Executive Committee membership. *See id.* at 1228-1232. The court explained that the "control" the hospital exercised over the partnership "clearly qualifie[d]"

---

[4]Greenwood Leflore Hospital, as a public community hospital, was an instrumentality of the State. *Bolivar Leflore Medical*, 938 So.2d at 1227.

9

the partnership as an instrumentality of the hospital "entitled to the protections, limitations and immunities of the MTCA." *Id*. at 1232.

In *Estate of Fredrick Ex Rel. Sykes v. Quorum Health Resources, Inc.*, 45 So.3d 667 (Miss. Ct. App. 2009), *rev'd on other grounds*, 45 So.3d 641 (Miss. 2010), the Mississippi Supreme Court found that a review of the management agreement between QHR, a for-profit, Delaware corporation, and the governmental entity, a community hospital, revealed that QHR was an instrumentality of the hospital. *Sykes*, 45 So.3d at 674. Most importantly, the agreement made it clear that the hospital did not "abdicate any of its control or authority over its operation or its business." *Id.* The agreement expressly stated that the relationship between the hospital and QHR was one of principal and agent and that the hospital and QHR were "*not* partners, joint venturers, or *independent contractors* . . . . *Id*. at 675 (emphasis added). The court pointed out that

> [a]lthough . . . [QHR] is a subsidiary of one of the largest hospital corporations in the United States, considering the foregoing provisions of the management agreement, it is clear that under the precise circumstances of this case and context of the relationship between . . . [QHR] and . . . [the hospital], there is no genuine issue of material fact regarding whether . . . [QHR] is an 'instrumentality' of . . . [the hospital]. As an 'instrumentality' of a community hospital, . . . [QHR] is entitled to the protections, limitations[,] and immunities of the MTCA.'

*Id.* (citations omitted).

Finally, the Southern District considered the issue again in *Natchez Regional Medical Center v. Quorum Health Resources LLC*, No. 5:09-cv-207-DCB-JMR, 2010 WL 3324955 (S.D. Miss. Aug. 20, 2010). In that case QHR, a private corporation contracting with a community hospital, was sued by the hospital under a hospital management agreement between it and the hospital. *Id*. at *1. QHR argued it was an instrumentality of the hospital and

10

performed "government activities" under its contract with the hospital and was thus entitled to the protections, limitations, and immunities of the MTCA. *Id*. at *2. The court noted that QHR's position was "analogous to the position of McDonald Transit Associates, Inc. in *Thompson*." *Natchez Regional*, 2010 WL 3324955, at *4. Ultimately, the court concluded that "QHR . . . [was] not entitled to the protections, limitations, and immunities of the MTCA." *Id.* The court found it important to note that QHR was "a Delaware company with its principal place of business in Tennessee and, presumably, ha[d] capitalistic ventures elsewhere." *Id*. However, the court also found that while the Mississippi Supreme Court in *Sykes* had earlier determined that QHR was an instrumentality of the State in that case, the findings in *Sykes* were not applicable to the facts in *Natchez Regional* because in *Natchez Regional* QHR was being sued by the State–and there was no authority that the MTCA applied to such circumstances–and the *Sykes* court had specifically limited its holding to the facts in that case. *See Natchez Regional*, 2010 WL 3324955, at *3-4. (citation omitted).

Having thoroughly considered the foregoing cases, the court is convinced that Wexford is not entitled to the immunity intended for the State, its political subdivisions, and their employees under the MTCA. Specifically, the foregoing cases lead to the conclusion that Wexford does not operate as a "political subdivision" of the State because it is a foreign corporation and its contract with the State for provision of health care services to prisoners reveals that the State is not the controlling force behind Wexford's provision of those services.

First, Wexford is a private, for-profit, Florida corporation with business interests presumably other than those at issue here. Second, contrary to Wexford's assertion in its reply brief, the provisions of the contract between MDOC and Wexford are key to the determination

herein and are very revealing. For example, the contract clearly indicates that Wexford assumed full responsibility for any liability, damages, and injury resulting from its or its employees' own acts or omissions:

> 10.1 <u>Indemnification and Representation</u>. Wexford hereby assumes the entire responsibility and liability for any and all damages or injury of any kind or nature, including death, proven to have resulted from Wexford's acts or omissions to all persons, including Wexford's employees, officers or agents and for all property damages caused by, or arising out of the services performed by Wexford pursuant to this Agreement.
>
> 10.1.1 Wexford will defend, at its expense, any actions filed against it or any of its employees based upon its performance of this Agreement. The State of Mississippi and MDOC shall not be responsible for providing representation for Wexford and its employees in any such action.
>
> 10.2 <u>Indemnification and Representation</u>. The MDOC hereby assumes the entire responsibility and liability for any and all damages or injury of any kind or nature, including death, proven to have resulted from MDOC's acts or omissions to all persons, including MDOC's employees, officers or agents and for all property damage caused by, or arising out of the services performed by MDOC pursuant to this Agreement.
>
> 10.2.1 MDOC will defend, at its expense, any actions filed against it or any of its employees, as defined by statute, based upon its performance of this Agreement. Wexford shall not be responsible for providing representation for the State of Mississippi, MDOC and its employees in any such action.

Ex. to Lynda Powell Summ. J. Aff. [Doc. 45-2].

Furthermore, though there is some oversight by MDOC, the contract expressly defines Wexford's status as "independent contractor":

> 11.6 Independent Contractor Status. The MDOC expressly acknowledges that Wexford is an "independent contractor," and nothing in the Agreement is intended nor shall be construed to create an agency relationship, an employer/employee relationship, a joint venture relationship, or any other relationship allowing the MDOC to exercise control or direction over the manner or method by which Wexford or its subcontractors perform hereunder. As such Wexford shall pay all federal, state, and local taxes that accrue to it because of this Agreement.

12

*Id.*

Interestingly, the language in Wexford's contract with MDOC is in diametric contradiction to the language of the contract involved in *Sykes*, where the Mississippi Supreme Court found the private entity indeed operated as a political subdivision or instrumentality of the State under the MTCA. In *Sykes* the contract revealed the private entity's role was that of an agent of the governmental entity and not an independent contractor. Here, on the other hand, the contract expressly denies an agency relationship and identifies Wexford as an independent contractor. In *Skyes* the contract stated that the governmental entity did not abdicate any of its authority or control over operation of its business. In this case, however, the contract expressly denies any relationship that would allow the State "to exercise control or direction over the manner or method by which Wexford . . . perform[s]" under the contract.

Accordingly, because Wexford is a private, for profit foreign corporation mainly in charge of the operation of its business of providing medical care to inmates pursuant to contract with the State, it is not covered by the MTCA.

### B. Whether § 11-46-1(f) Evinces an Intent By the Legislature to Cover Health Providers Like Wexford

Wexford's argument that certain provisions of § 11-46-1(f) reinforce its position that the MTCA applies to it is also without merit.[5] Wexford contends that while it is not an "employee"

---

[5]Section 11-46-1(f) provides as follows:

(f) "Employee" means any officer, employee or servant of the State of Mississippi or a political subdivision of the state, including elected or appointed officials and persons acting on behalf of the state or a political subdivision in any official capacity, temporarily or permanently, in the service of the state or a political subdivision whether with or without compensation. The term "employee" shall not mean a person or other legal entity while acting in the capacity of an independent contractor under contract to the state or a political subdivision; provided, however, that for purposes of the limits of liability provided for in Section 11-46-15, the term "employee" shall include physicians under contract to provide health services with the State Board of Health, the

13

within the meaning of § 11-46-1(f), the language and the history of that section, nonetheless, indicate that the Mississippi Legislature "intended to [broadly] extend the MTCA's coverage to healthcare providers like Wexford." Br. in Supp. of Wexford's Mot. for Imm. and Corr. Summ. J. 8-11. However, Wexford overlooks the fact that while the Legislature grants immunity to State *employees* who provide health care services to the public, it expressly excludes persons or legal entities who provide the same services while "acting in the capacity of an *independent contractor under contract to the state or a political subdivision.*" *See* § 11-46-1(f). Accordingly, because Wexford is an independent contractor pursuant to the express terms of its contract with MDOC, § 11-46-1(f) actually undermines Wexford's position.

Likewise, the court finds Wexford's comparison of itself to physicians who provide medical services in county and municipal jails misguided. *See* Br. in Supp. of Wexford's Mot. for Imm. and Corr. Summ. J. 10-11. Section 11-46-1(f) expressly deems *physicians* who provide medical care under contract with county or municipal jail facilities to be *employees* of the State. Again, Wexford under its contract with the State is not operating as an *employee* but, instead, as an *independent contractor.*

Ultimately, because Wexford is not entitled to immunity under the MTCA, neither can its

---

State Board of Mental Health or any county or municipal jail facility while rendering services under such contract. The term "employee" shall also include any physician, dentist or other health care practitioner employed by the University of Mississippi Medical Center (UMMC) and its departmental practice plans who is a faculty member and provides health care services only for patients at UMMC or its affiliated practice sites. The term "employee" shall also include any physician, dentist or other health care practitioner employed by any university under the control of the Board of Trustees of State Institutions of Higher Learning who practices only on the campus of any university under the control of the Board of Trustees of State Institutions of Higher Learning. The term "employee" shall also include any physician, dentist or other health care practitioner employed by the State Veterans Affairs Board and who provides health care services for patients for the State Veterans Affairs Board. The term "employee" shall also include Mississippi Department of Human Services licensed foster parents for the limited purposes of coverage under the Tort Claims Act as provided in Section 11-46-8.

employees, Dr. Santos, Dr. Lehman, and Dr. Trinca, claim immunity with respect to Plaintiff's state law claims under the Act.

## V. Conclusion

For the foregoing reasons, Defendants Wexford, Dr. Santos, Dr. Lehman, and Dr. Trinca, are not entitled to immunity under the MTCA. Therefore, Defendants' Motion for Immunity and Corresponding Partial Summary Judgment [Doc. 45] is DENIED.

SO ORDERED this 25th day of June, 2012.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**